# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DERWAYNE WESLEY SHARP,          )
                                )
       Petitioner,              )
                                )
       v.                       )          1:13CR384-1
                                )          1:20CV453
UNITED STATES OF AMERICA,       )
                                )
       Respondent.              )

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

On June 18, 2014, this Court (per then-Chief United States District Judge William L. Osteen, Jr.) entered a Judgment against Petitioner imposing, inter alia, a prison term of 246 months, as a result of his guilty plea to Count One of his Indictment, which charged him with enticing and coercing a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, in violation of 18 U.S.C. § 2251(a) and (e).  (Docket Entry 23 at 1-2; <u>see also</u> Docket Entry 1 (Indictment); Docket Entry 11 (Amended Factual Basis); Docket Entry 14 (Plea Agreement); Docket Entry 39-1 (Plea Hrg. Tr.).)[1] Petitioner did not appeal.  (<u>See</u> Docket Entry 26 at 1.)[2]

On May 21, 2020, the Clerk docketed Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence

---

[1] Parenthetical citations refer to Petitioner's above-captioned federal criminal case.

[2] Pin cites to this document refer to the page numbers that appear in the footer appended at the time of docketing in the CM/ECF system (not to any internal pagination).

("Section 2255 Motion") (see id. at 1 (bearing date-stamp)), which he "declare[d] . . . under penalty of perjury . . . [he] placed in the prison mailing system on May 16, 2020" (id. at 12; see also Docket Entry 27 at 1 (listing "Mailed" date of "May 16, 2020" for "Supporting Memoranda")). The Section 2255 Motion presents one ground for relief: "Factual Innocence." (Docket Entry 26 at 4; see also id. ("[Petitioner] did not entice the minor to perform any activity for the purpose of recording the activity. And [Petitioner] could not be charged with possession of child pornography or enticement of a minor as mentioned because both statutes is [sic] unconstitutional. See supporting memoranda.").)

The United States has responded "that [the Section] 2255 M]otion is time-barred and should be dismissed." (Docket Entry 39 ("Dismissal Motion") at 2; see also id. at 19 (certifying service of Dismissal Motion on Petitioner by mail on September 15, 2020).) The Clerk (via letter dated September 16, 2020) notified Petitioner of his "right to file a 20-page response in opposition to the [Dismissal M]otion" (Docket Entry 40 at 1) and warned him that:

> [F]ailure to respond or, if appropriate, to file counter affidavits or evidence in rebuttal within the time allowed may cause the [C]ourt to conclude that the [Dismissal Motion's] contentions are undisputed. As a result, the [C]ourt may dismiss your suit or render judgment against you. Therefore, unless you file a response in opposition to the [Dismissal M]otion, it is likely your case will be dismissed . . . . Any response or counter-affidavits or other responsive material to [the Dismissal] Motion . . . must be filed within 21 days from the date of service of the [Dismissal M]otion upon you.

(Id. (bold font omitted).)  Despite that warning, Petitioner did
not respond to the Dismissal Motion.  (See Docket Entries dated
September 15, 2020, to present.)

"A 1-year period of limitation shall apply to a motion under
[ S]ection [2255]."  28 U.S.C. § 2255(f).  Furthermore:

[t]he limitation period shall run from the latest of--

(1) the date on which the judgment of conviction becomes
final;

(2) the date on which the impediment to making a motion
created by governmental action in violation of the
Constitution or laws of the United States is removed, if
the movant was prevented from making a motion by such
governmental action;

(3) the date on which the right asserted was initially
recognized by the Supreme Court, if that right has been
newly recognized by the Supreme Court and made
retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or
claims presented could have been discovered through the
exercise of due diligence.

Id.

Under Paragraph (1) of Subsection 2255(f), Petitioner's one-
year period for seeking relief via Section 2255 began at the end of
the day on July 2, 2014, "upon the expiration of the fourteen-day
period for filing a direct appeal [after entry of the Judgment],"
United States v. Diallo, 581 F. App'x 226, 227 (4th Cir. 2014)
(citing Clay v. United States, 537 U.S. 522, 525 (2003), and Fed.
R. App. P. 4(b)(1)(A)(i), (b)(6)); see also United States v.
Oliver, 878 F.3d 120, 125 (4th Cir. 2017) ("A criminal conviction

3

becomes final at the end of the appellate process — i.e., when the time for a direct appeal expires and the defendant has not noticed an appeal or, if the defendant pursues an appeal, when the time for filing a petition for certiorari expires."). That one-year period thereafter expired at the end of the day on July 2, 2015, nearly five years before (as documented above) Petitioner submitted the Section 2255 Motion for mailing (on May 16, 2020). See, e.g., United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000) (holding that, pursuant to Paragraph (1) of Subsection 2255(f), "[t]he first day of the 1-year limitation period is the day after [a conviction became final], giving defendants until . . . the anniversary date of the [conviction becoming final] to file their habeas motion"), cited with approval in Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

"Because Petitioner filed [the Section 2255] Motion after the statute of limitations [under Paragraph (1) of Subsection 2255(f)] had run, the Court [should] find[] that his [Section 2255 M]otion is untimely unless Petitioner [has] satisf[ied] his burden of demonstrating that either another provision of § 2255(f) or equitable tolling should be applied to his case." Gaddy v. United States, Nos. 3:08CR50, 3:11CV49, 2011 WL 7021140, at *4 (N.D.W. Va. Dec. 15, 2011) (unpublished) (emphasis added), recommendation adopted, 2012 WL 112638 (N.D.W. Va. Jan. 12, 2012) (unpublished), appeal dismissed, 473 F. App'x 281 (4th Cir. 2012); see also

Holland v. Florida, 560 U.S. 631, 649 (2010) (holding, in habeas context, that equitable tolling requires proof of two preconditions: "(1) that [the petitioner] has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing" (internal quotation marks omitted)). The Section 2255 Motion does not contend that Paragraphs (2)-(4) of Subsection 2255(f) apply; rather, in the portion of the Section 2255 form entitled "Timeliness of Motion" (Docket Entry 26 at 10 (all-caps font omitted)), which instructs petitioners that, "[i]f [their] judgment of conviction became final over one year ago, [they] must explain why the one-year statute of limitations as contained in [Section] 2255 does not bar [their] motion" (id.; see also id. at 11 n.* (setting out Section 2255(f)'s full text)), Petitioner wrote: "Innocence exception to statute of limitations, equitable tolling applies due to mental defects, illiteracy, and other factors." (Id. at 10; see also id. (crossing out words "or is timely under 28 USC 2255(f)(4)").) Petitioner's Supporting Memoranda likewise purports to "establish[] equitable tolling" (Docket Entry 27 at 1), on the grounds that "[Petitioner] is illiterate[ and] has dyslexia, [as well as] learning and other mental defects" (id. (citing Docket Entry 16)) or, "[a]lterntively, because [his] claim is first and foremost a claim of factual innocence" (id. at 2; see also id. (referring to "innocence exception to . . . 1 year statute of limitations")).

5

The document cited as support for Petitioner's allegations of illiteracy and mental impairments consists of an evaluation prepared by a psychologist in advance of sentencing (see Docket Entry 16 (the "Evaluation") at 1-2), which recounts Petitioner's self-report that "he completed the seventh grade" (id. at 3), "attended a school 'for people who couldn't handle real school'" (id.), "repeated first and second grades due to academic problems" (id.), "was placed in special education classes throughout his education" (id.; see also Docket Entry 20, ¶ 55 (documenting school records showing that, at age eight, "[Petitioner] was enrolled in the Exceptional Children's program")), "has 'a form of dyslexia' as well as attention problems" (Docket Entry 16 at 3), "was prescribed Ritalin throughout his education" (id.; see also Docket Entry 20, ¶ 55 (documenting school records showing that, at age nine, "[Petitioner] was placed on Ritalin" and that, "[a]ccording to school administrators, . . . LD (learning disability) would be the most appropriate placement for him'" (italics omitted))), "can currently read a little but cannot write" (Docket Entry 16 at 3), "left school because he could not keep up with other students" (id.), "attempted to earn his GED but could not concentrate enough" (id.), held various jobs from 1995 to 2005 from which "he was never fired" (id.), subsequently suffered from "medical problems [which] ha[d] prevented him from working much" (id.), "does not know how to talk to people because he is 'slow' and [] believes other people

6

are smarter than he is" (id. at 4), "does not try to socialize and make friends out of fear that people would think he is 'slow or crazy'" (id.), "sustain[ed] multiple head injuries with loss of consciousness, starting at age 14 or 15" (id. at 5), "has not received inpatient psychiatric treatment" (id.), "has not received psychotherapy or counseling" (id.), "has not been prescribed psychiatric medication" (id.), "considered seeking psychotherapy for depression or his pornography use but could not afford it" (id.), "experienced depressed mood and anhedonia that lasted for one week but not for two weeks" (id. at 9), as well as "periods of low motivation, such as not wanting to get out of bed" (id.), "never attempted to kill himself" (id.), but "acknowledged . . . thinking about suicide" (id.), experienced "periods of decreased need for sleep, when he will stay awake until he falls asleep out of exhaustion" (id.), "feels anxious and tense frequently" (id.), "worr[ies] about neatness and order" (id.), "had panic attacks if he was driving and forgot where he was" (id.), "acknowledged paranoid ideation" (id. at 10), "has ideas that he believes are great but that other people tell him are foolish" (id.), experienced "auditory hallucinations of voices calling his name or telling him to do something" (id.), as well as "two visual hallucinations during his lifetime" (id.), but "no commands to harm someone" (id.), "has anger management problems" (id.), and "has assaulted someone with little reason" (id.).

The Evaluation also details Petitioner's completion of a test "that provides a nonverbal estimate of general intelligence" (id. at 13), on which "[he] obtained a[n ] IQ score of 93" (id.), which falls "in the Average range of intellectual functioning, relative to his peers" (id.; see also Docket Entry 20, ¶ 55 (documenting school records showing that tests administered to Petitioner at ages eight, 11, and fourteen reflected "Full Scale I.Q. score[s] of 104," "90," and "99," respectively, with last "show[ing] that [he] 'displayed relatively severe discrepancies in reading and written language, and a mild discrepancy in math'"). In addition, per the Evaluation, two personality inventories administered to Petitioner "include[d] several elevated scores" (Docket Entry 16 at 10; accord id. at 11), "indicating that he reported significant difficulties across a wide range of areas" (id. at 10) and "significant personality problems in many areas" (id. at 11), including "high levels of anxiety" (id. at 10) and "high levels of depressive symptoms" (id. at 11), as well as "symptoms often observed in people with psychotic disorders" (id.), "consistent with significant personality disturbance" (id.), and linked to "severe impairment in [] social relationships and self-image" (id.; see also id. at 12 ("His results indicate that he experiences problems with anxiety and mood regulation. . . . [He] also reported symptoms associated with mania . . . .")).

8

With regard to both those inventories, the Evaluation notes –
pursuant to an analysis of "validity scales" (id. at 10, 11) –
"[h]owever, [that Petitioner] may have exaggerated the extent or
degree of his problems" (id. at 10) and "may have presented an
unrealistically negative image of himself" (id. at 11). "The
results of th[e] administration of [those inventories thus] may
overrepresent the true extent or degree of his psychological
difficulties" (id. at 10) and "may overestimate [his] current
psychological impairment" (id. at 11). Nonetheless, the Evaluation
states (as to mental disorders) that "[Petitioner's] diagnoses are
considered to be as follows: Generalized Anxiety Disorder[;] Major
Depressive Disorder, Moderate Severity, Recurrent[;] Rule Out
Bipolar II Disorder[;] Other Specified Personality Disorder (with
Schizotypal and Avoidant features)[;] Attention Deficit
Hyperactivity Disorder (by history)[;] Rule Out Voyeuristic
Disorder[; and] Pedophillic Disorder, Nonexclusive Type, Sexually
attracted to females[.]" (Id. at 17 (codes from Diagnostic and
Statistical Manual of Mental Disorders, Fifth Edition, omitted).)

Beyond its bald citation to the Evaluation, the Supporting
Memoranda rests Petitioner's claim to equitable tolling due to his
"illitera[cy], [] dyslexia, learning [disability,] and other mental
defects" (Docket Entry 27 at 1) on the conclusory assertion that
"[t]hese disabilities categorically prevented [him] from timely
filing the [Section 2255 Motion] as [they] hindered [his] ability

to represent himself, know the law, seek advice, or [perform] other menial tasks that would have permitted [him] to discover and sufficiently submit any reasonable claim" (id.). However, "[m]ere conclusory allegations are insufficient to raise the issue of equitable tolling." San Martin v. McNeil, 633 F.3d 1257, 1268 (11th Cir. 2011); accord, e.g., Mahoney v. Daniels, No. 5:13HC2188, 2014 WL 4162406, at *4 n.3 (E.D.N.C. Aug. 20, 2014) (unpublished), appeal dismissed, 585 F. App'x 288 (4th Cir. 2014); Smith v. Virginia, No. 3:12CV148, 2013 WL 871519, at *4 (E.D. Va. Mar. 8, 2013) (unpublished); see also United States v. Taylor, 22 F. App'x 226, 227 (4th Cir. 2001) ("[C]onclusory allegations of illness are insufficient to equitably toll the statute of limitations.").

Further, the United States Court of Appeals for the Fourth Circuit has recognized that, "[a]s a general matter, the federal courts will apply equitable tolling because of a petitioner's mental condition only in cases of profound mental incapacity." United States v. Sosa, 364 F.3d 507, 513 (4th Cir. 2004) (emphasis added). In so doing, it favorably cited a sister circuit's decision for the proposition that "equitable tolling based on mental condition [is] appropriate 'only in exceptional circumstances, such as institutionalization or adjudged mental incompetence,'" id. (quoting Grant v. McDonnell Douglas Corp., 163 F.3d 1136, 1138 (9th Cir. 1998)). As detailed above, the Evaluation (the sole evidentiary basis for equitable tolling due to

10

mental defect) does not support a finding that Petitioner <u>ever</u> suffered from anything approaching "profound mental incapacity," <u>id.</u>, i.e., disability resulting in "institutionalization or adjud[ication of] mental incompetence," <u>id.</u> (internal quotation marks omitted). Similarly, members of this Court repeatedly have ruled that "illiteracy does not constitute grounds for equitable tolling." <u>Clark v. United States</u>, Nos. 1:08CR48 & 53, 1:14CV963, 2015 WL 7302256, at *2 (M.D.N.C. Nov. 18, 2015) (unpublished) (Osteen, C.J.); <u>accord, e.g.</u>, <u>Jackson v. United States</u>, Nos. 1:07CR169-5, 1:09CV112, 2009 WL 5171869, at *2-3 (M.D.N.C. Dec. 22, 2009) (unpublished) (Dixon, M.J.), <u>recommendation adopted</u>, slip op. (M.D.N.C. May 17, 2010) (Beaty, C.J.); <u>Bryant v. Beck</u>, No. 1:08CV181, 2008 WL 2949247, at *2-3 (M.D.N.C. July 30, 2008) (unpublished) (Eliason, M.J.), <u>recommendation adopted</u>, slip op. (M.D.N.C. Feb. 5, 2009) (Osteen, J.); <u>see also</u> <u>Sosa</u>, 364 F.3d at 512 ("[E]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling.").

In any event, Petitioner has failed to establish that, with due diligence and despite his illiteracy and/or mental impairment, he could not have filed his Section 2255 Motion within the applicable limitations period (or at any other point in the close to five years that passed <u>between</u> the one-year anniversary of the expiration of his time to file a direct appeal <u>and</u> the date he tendered the Section 2255 Motion to prison officials for mailing).

11

(See Docket Entry 26 at 10; Docket Entry 27 at 1-2.) For example, Petitioner has not described any efforts he undertook to prepare a habeas motion (or to obtain assistance to do so) before the expiration of the one-year limitation period (much less how his deficiencies thwarted those efforts). (See id.) Petitioner thus has not met his burden of showing "(1) that [he] ha[d] been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing," Holland, 560 U.S. at 649 (internal quotation marks omitted). See, e.g., Jones v. Howard, No. 20-1392, 2020 WL 6440472, at *2 (6th Cir. Sept. 28, 2020) (unpublished) ("[The petitioner's] argument that she is entitled to equitable tolling due to her mental conditions is conclusory. She does not describe how her mental conditions prevented her from filing a timely [habeas] petition, and an allegation or evidence of a mental condition is insufficient by itself."); Mack v. Clarke, No. 2:19CV359, 2020 WL 3240828, at *3 (E.D. Va. Apr. 10, 2020) (unpublished) ("The [c]ourt cannot grant equitable tolling based on a conclusory allegation that [the petitioner's] mental illness caused his failure to file on time."), recommendation adopted, 2020 WL 3244002 (E.D. Va. June 15, 2020) (unpublished), appeal dismissed, 841 F. App'x 630 (4th Cir. 2021).

   Under these circumstances, the Court should not grant equitable tolling (particularly not for the near-half-decade sought), because (as the Fourth Circuit has explained):

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be <u>guarded and infrequent</u>, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. . . . [A]ny resort to equity must be <u>reserved for</u> those <u>rare instances</u> where — due to circumstances external to the party's own conduct — it would be <u>unconscionable</u> to enforce the limitation period against the party and <u>gross injustice</u> would result.

<u>Harris v. Hutchinson</u>, 209 F.3d 325, 330 (4th Cir. 2000) (emphasis added) (addressing parallel limitation period for habeas claims brought by state prisoners under 28 U.S.C. § 2254); <u>see also</u> <u>CVLR Performance Horses, Inc. v. Wynne</u>, 792 F.3d 469, 476 (4th Cir. 2015) ("Equitable tolling has long been considered an extraordinary remedy in this circuit, and litigants face a considerable burden to demonstrate that it applies." (citing <u>Harris</u>)); <u>Rouse v. Lee</u>, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) ("Congress enacted [statutes of limitation for habeas claims] to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of . . . finality . . . . [T]he [] statute of limitations [for habeas claims] is subject to equitable tolling . . . . [H]owever, rarely will circumstances warrant equitable tolling[.]" (internal quotation marks omitted)).[3]

---

[3] The Supreme Court also has emphasized the importance of judicial respect for (and the concomitant perils of judicial erosion of) legislatively imposed limitation periods. <u>See</u> <u>Baldwin Cnty. Welcome Ctr. v. Brown</u>, 466 U.S. 147, 152 (1984) ("Procedural requirements established by Congress for gaining access to the
(continued...)

Consistent with those principles, "[t]he bar to successfully establish facts allowing equitable tolling is very high and the burden is on Petitioner to present facts that allow him to clear that bar. Any other rule would allow courts to impermissibly undermine [the] goal of encouraging prompt filings through the use of the one-year limitation period." Fowler v. Hall, No. 1:09CV248, 2009 WL 3151869, at *3 (M.D.N.C. Sept. 24, 2009) (unpublished) (Dietrich, M.J.) (emphasis added) (internal citation omitted) (citing Rouse, 339 F.3d at 246), recommendation adopted, slip op. (M.D.N.C. Apr. 6, 2010) (Tilley, S.J.); see also Rouse, 339 F.3d at 253 ("The doctrine of equitable tolling is not a license to suspend enactments of Congress whenever [a court] happen[s] to believe that enforcement of a limitations period would create a hardship."); Marcello, 212 F.3d at 1010 ("[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule."). Given the "very high [bar to show eligibility for equitable tolling] and the burden [] on Petitioner to present facts that allow him to clear that bar," Fowler, 2009 WL 3151869, at *3, the Court should conclude (A) that "[Petitioner] has not shown any extraordinary circumstances beyond his control that prevented him

---

[3](...continued)
federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants. As we stated [previously], in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." (internal brackets, citation, and quotation marks omitted)).

from complying with the [] statute of limitations, [and thus (B) that] he is not entitled to equitable tolling. Accordingly, [the Section 2255 Motion] was filed after the expiration of the limitations period, and . . . th[is C]ourt[ should] dismiss[ the Section 2255 Motion] as untimely." Rouse, 339 F.3d at 257.

Nor should the Court accept Petitioner's "[a]lternative[ argument that he] . . . enjoys the innocence exception to . . . [the] 1 year statute of limitations" (Docket Entry 27 at 2). Although "actual innocence, if proved, serves as a gateway through which a petitioner may pass . . . in th[e] case[ of the] expiration of the statute of limitations," McQuiggin v. Perkins, 569 U.S. 383, 386 (2013), "[this] miscarriage of justice exception, [the Supreme Court has] underscore[d], applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted the petitioner," id. at 394-95 (emphasis added) (internal quotation marks and brackets omitted). "[Petitioner] offers no new evidence at all, and his assertion of actual innocence fails on this basis." Reid v. True, 349 F.3d 788, 806 (4th Cir. 2003). Put another way, Petitioner's "actual innocence claim is facially inadequate to require consideration because [he] does not allege that there is any new, reliable evidence of any type that was not presented in any of his prior court proceedings which supports his innocence of the charge." Moore v. United States, C/A No. 9:10-169, 2010 WL

15

2893815, at *3 (D.S.C. Apr. 19, 2010) (unpublished), <u>recommendation</u> <u>adopted</u>, 2010 WL 2893814 (D.S.C. July 22, 2010) (unpublished).

More specifically, Petitioner (as previously documented) pleaded guilty to violating Section 2251(a) by enticing and coercing a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, but now (as the Dismissal Motion points out) he "asserts legal arguments about that offense's elements, and claims [Section] 2251(a) itself is unconstitutional due to vagueness and defects related to the Commerce Clause" (Docket Entry 39 at 10 (citing Docket Entry 27 at 4-13)). In other words, "Petitioner does not present any newly-discovered evidence, but makes only legal arguments as to why he is actually innocent of the crimes to which he pleaded guilty. He is therefore not entitled to equitable tolling based on an actual innocence claim." <u>Midgette v. United States</u>, Nos. 15-281, 17-2279, 2020 WL 1890530, at *2 (D. Md. Apr. 16, 2020) (unpublished) (internal citation omitted); <u>see also</u> <u>Moya v. United States</u>, Nos. 1:09CR329, 1:13CV1056, 2017 WL 1155049, at *4 (M.D.N.C. Mar. 27, 2017) (unpublished) (Schroeder, J.) ("[The p]etitioner has presented no new evidence, beyond his conclusory assertions that his guilty plea was not entered into knowingly and voluntarily, to establish that he is actually innocent of the crimes to which he pled guilty. This is insufficient . . . .").

Petitioner's legal arguments also lack merit (and thus do not establish his actual innocence). For example, the Supporting Memoranda states that "[t]he Supreme Court recently held in Rehaif v. United States[, ___ U.S. ___, 139 S. Ct. 2191 (2019),] that the sceinter [sic] element is to be proven on all elements of the offense" (Docket Entry 27 at 2 (underscoring added) (citing Rehaif, ___ at ___, 139 S. Ct. at 2192-93)), such that – to violate Section 2251(a) – "[Petitioner] was required to know that he was specifically using a channel [of], instrument [of], or was affecting interstate commerce" (id. at 5 (emphasis omitted); see also id. ("[N]or did [Petitioner] know that he used a channel [of], instrument [of], or affected interstate commerce." (stray comma omitted))). In fact, Rehaif held no such thing and Petitioner's conviction for violating Section 2251(a) required proof of no such thing. See Rehaif, ___ U.S. at __, 139 S. Ct. at 2196 ("Because jurisdictional elements normally have nothing to do with the wrongfulness of the defendant's conduct, such elements are not subject to the presumption in favor of scienter."); see also United States v. Feola, 420 U.S. 671, 676 n.9 (1975) ("[T]he existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute."); United States v. Heinrich, 57 F.4th 154, 165 (3d Cir. 2023) ("Subsection (a) [of Section 2251] already ensures that the defendant is aware of 'the full significance of

17

his conduct.' . . . [W]hen the defendant uses a minor to engage in the forbidden conduct himself or induces the minor to engage in the conduct, he necessarily acts knowingly. The Constitution does not require more . . . . Some conduct is obviously wrongful. . . . [O]ne would hardly be surprised to learn that he may not put children in lewd poses and photograph their exposed genitals." (some internal quotation marks omitted) (quoting Rehaif, ___ U.S. at ___, 139 S. Ct. at 2198)); United States v. Hicks, 15 F.4th 814, 818 (7th Cir. 2021) ("*Rehaif* does not question the continued vitality of *Feola*. . . . *Feola* addresses the question whether conviction depends on a defendant's knowledge of the reason the case is in federal rather than state court. *Rehaif* dealt with a different sort of problem: knowledge of a fact essential to the existence of any crime.").[4]

---

[4] As previously discussed, Petitioner has not contended that Paragraph (3) of Subsection 2255(f) renders the Section 2255 Motion timely and the Supporting Memoranda's (misguided) invocation of Rehaif would not have provided a basis for any such contention, see United States v. Brown, 868 F.3d 297, 301 (4th Cir. 2017) ("[A] Supreme Court case has 'recognized' an asserted right within the meaning of § 2255(f)(3) if it has formally acknowledged that right in a definite way. Correspondingly, if the existence of a right remains an open question as a matter of Supreme Court precedent, then the Supreme Court has not 'recognized' that right." (internal citation omitted)); Eye v. Streeval, No. 7:20CV272, 2021 WL 3423555, at *7 (W.D. Va. Aug. 5, 2021) (unpublished) ("Rehaif's holding . . . was limited to [18 U.S.C.] § 922(g). [The petitioner] has pointed to no case in which the Supreme Court has extended Rehaif to other statutes, and the court is aware of none." (internal citations omitted)), aff'd, No. 21-7729, 2022 WL 1283130 (4th Cir. Apr. 29, 2022) (unpublished); Pavulak v. von Blankensee, No. CV 20-290, 2020 WL 6536617, at *2 n.1 (D. Ariz. Oct. 15, 2020) (continued...)

The Supporting Memoranda additionally would have the Court declare Petitioner "innocen[t] as to Count 1" (Docket Entry 27 at 4 (underscoring omitted)), because "[he] had to have an objective intent of enticing the minor for the primary purpose of recording the conduct" (id. (emphasis added)).  In so arguing, Petitioner once again has misstated the law:  "§ 2251(a) contains a specific intent element:  the government was required to prove that production of a visual depiction was a purpose of engaging in the sexually explicit conduct."  United States v. Palomino-Coronado, 805 F.3d 127, 130 (4th Cir. 2015) (emphasis added).[5]

_____

[4](...continued)
(unpublished) ("*Rehaif* applies to convictions under 18 U.S.C. § 922(g) . . . and [18 U.S.C.] § 924(a)(2) . . . . [T]he question before the Supreme Court in *Rehaif* concerned the scope of the word knowingly as used in 18 U.S.C. § 924(a), not as used in any other statute." (emphasis and internal quotation marks omitted)), certificate of appealability denied, No. 20-17164, 2021 WL 1803664 (9th Cir. Mar. 29, 2021) (unpublished).

[5] Consistent with the Fourth Circuit's above-quoted description of the mens rea element of Section 2251(a), (A) Count One of the Indictment expressly charged that "[Petitioner] did employ, use, persuade, induce, entice, and coerce a female minor . . . to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct" (Docket Entry 1 at 1 (emphasis added); see also Docket Entry 39-1 at 5 (memorializing Petitioner's confirmation (under oath) that, after his counsel read him the Indictment, he understood it)), and (B) the Court (per then-Chief Judge Osteen) advised Petitioner during his plea hearing that "the facts the United States would be required to prove beyond a reasonable doubt at any trial, include . . . [t]hat [Petitioner] employed, used, persuaded, induced, enticed, or coerced any minor . . . [t]o engage in any sexually explicit conduct for the purpose of producing any visual depiction of that conduct" (Docket Entry 39-1 at 17 (emphasis added); accord id. at 18).  Petitioner thereafter confirmed his understanding of that mens rea element
(continued...)

Lastly, the Supporting Memoranda contends that "both [Section 2251(a) and the child pornography possession statute charged in Count Two of the Indictment, 18 U.S.C. § 2252A(a)(5)(B),] are unconstitutional exercises of the commerce clause." (Docket Entry 27 at 6; see also id. at 6-13 (arguing that said statutes' criminalization of non-commercial production and possession of child pornography conflicts with Congressional goal of reducing market for child pornography, makes said statutes vague, intrudes on privacy rights, and relies on unsupported notions of harm to children).) The Fourth Circuit, however, repeatedly has rejected

---

[5](...continued)

(see id. at 18), as well as his "understand[ing] that[,] by pleading guilty to this offense, [he ] admitt[ed] to the elements of the offense" (id. at 19). After Petitioner denied "hav[ing] any questions" (id.), then-Chief Judge Osteen asked Petitioner "how do you plead to the offense charged in Count One" (id.) and Petitioner answered "Guilty, Your Honor" (id.; see also id. ("THE COURT: Are you pleading guilty because you are, in fact, guilty? [Petitioner]: Yes, Your Honor. THE COURT: . . . The Court [] finds [Petitioner] is aware of the nature of the charges . . . and his plea of guilty is a knowing and voluntary plea." (bold font omitted))). Moreover, the Amended Factual Basis supporting Petitioner's guilty plea to Count One recites that, after a search of his computer revealed "photos of [a minor] in sexual activity" (Docket Entry 11 at 1), Petitioner admitted "he had videotaped [the minor], and then had the tape converted to still images which he retained on his computer" (id. at 2). Before entry of the Judgment, Petitioner not only "generally agree[d] with th[os]e facts" (Docket Entry 39-1 at 20), but also conceded additional facts cataloged in the Presentence Report showing that, inter alia, he "confessed that he used the camera to zoom in on the victim's vaginal area" (Docket Entry 20, ¶ 5; see also id., Addendum ("The defendant has no objections.")). Those admissions collectively constitute (in Petitioner's words) "[the] kind of evidence that would affirmatively prove [his] state of mind at the time" (Docket Entry 27 at 5) and (in the Fourth Circuit's words) "direct evidence indicating [his] purpose," Palomino-Coronado, 805 F.3d at 131.

such contentions.  See United States v. Malloy, 568 F.3d 166, 180 (4th Cir. 2009) ("Here, there was unquestionably local production of child pornography with a video camera and videotape that had traveled in foreign commerce.  Congress has concluded, and this court has upheld Congress's conclusion, that such production is part of an economic class of activities that have a substantial effect on interstate commerce. . . .  Consequently, we hold that § 2251(a) as applied to [the defendant] was a valid exercise of Congress's Commerce Clause power." (internal quotation marks omitted)); United States v. Forrest, 429 F.3d 73, 75-76 (4th Cir. 2005) ("[The defendant] challenges his conviction for the sexual exploitation of a child in violation of 18 U.S.C.A. §§ 2251(a) and 2252A(a)(5)(b) (West 2000).  He contends that Congress's Commerce Clause authority does not extend to his private, intrastate production and possession of child pornography . . . .  We reject each of these arguments . . . ."); United States v. White, 2 F. App'x 295, 297 (4th Cir. 2001) (reiterating rejection of attack on Section 2252A(a)(5)(B) as "impermissibly vague"); see also United States v. Wellbeloved-Stone, 777 F. App'x 605, 607 (4th Cir. 2019) (declining to construe National Fed'n of Indep. Bus. v. Sebelius, 567 U.S. 519 (2012), as "alter[ing] the constitutional status of the child pornography statutes").[6]

---

[6] To the extent (A) Petitioner has made a Due Process-based vagueness challenge (as opposed to a vagueness-related Commerce
(continued...)

Because Petitioner has not established a valid basis for equitable tolling or a finding of actual innocence, the Section 2255 Motion (filed nearly five years after his Judgment became final) fails as a matter of law due to its untimeliness.[7]

**IT IS THEREFORE RECOMMENDED** that the Section 2255 Motion (Docket Entry 26) be dismissed without issuance of a certificate of appealability.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**

August 2, 2023

---

[6](...continued)
Clause challenge) to Section 2251(a), which does not fail as vague itself, see generally United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the [d]istrict [c]ourt." (internal quotation marks omitted)), and (B) the Fourth Circuit has not directly spoken to that issue, the Court should follow persuasive authority repudiating those sorts of challenges, see, e.g., United States v. Laursen, 847 F.3d 1026, 1034-35 (9th Cir. 2017); United States v. Ruggiero, 791 F.3d 1281, 1290-91 (11th Cir. 2015).

[7] In the alternative, the above analysis debunking Petitioner's legal arguments as to his actual innocence likewise mandates denial on the merits of the Section 2255's lone ground for relief of "Factual Innocence" (Docket Entry 26 at 4), including any embedded sub-claim that "[Petitioner's] plea was not knowingly [sic] or voluntary" (Docket Entry 27 at 3), due to "ineffective assistance of counsel" (id.) and/or "[his] disabilities" (id.), because that ground for relief and sub-claim both depend on the same (errant) legal arguments about Section 2251(a) (see Docket Entry 26 at 4 (alleging unconstitutionality of Section 2251(a) as support for "Factual Innocence" ground for relief); Docket Entry 27 at 4 ("In light of the arguments (post), it would not be reasonable to plead guilty if [Petitioner] reasonably knew that his conduct did not violate [Section] 2251(a).")).